UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT SMITH,<br>on behalf of himself and other<br>similarly situated individuals,<br>Plaintiff,<br><br>v.<br><br>CHELMSFORD GROUP, LLC,<br>a Delaware limited liability company, and<br>NEWBURY MANAGEMENT COMPANY, a<br>Michigan corporation,<br>Defendants. | Case No. 1:21-cv-10654-DJC |

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
OF CHELMSFORD GROUP, LLC, AND NEWBURY MANAGEMENT COMPANY**

Defendants, Chelmsford Group, LLC ("Chelmsford Group"), and Newbury Management

Company ("Newbury") (together, the "Defendants") hereby Answer the Plaintiff's Class Action

Complaint for Injunctive Relief and Damages (the "Complaint") as follows:

INTRODUCTION

1.      Paragraph 1 contains conclusions of law to which no response is required. In

addition, the allegations in Paragraph 1 refer to Massachusetts statutory and case law that speaks

for itself. To the extent that the allegations in Paragraph 1 allege any liability on the part of

Defendants, these allegations are denied.

2.      Defendants admit that Chelmsford Commons Manufactured Housing Community

("Chelmsford Commons") is a manufactured housing community in Chelmsford, Massachusetts

that offers affordable home ownership opportunities. The Defendants admit that residents of

Chelmsford Commons typically own their manufactured homes and lease the land on which

those homes are located. Defendants deny the remaining allegations in Paragraph 2.

3.      Defendants admit that the residents of Chelmsford Commons pay rent. The Defendants admit that there are approximately 255 home-sites within Chelmsford Commons. The Defendants deny any remaining allegations in Paragraph 3.

4.      Defendants do not have sufficient information to admit or deny the allegations in Paragraph 4.

5.      The allegations in Paragraph 5 contain conclusions of law to which no response is required. In addition, the allegations in Paragraph 5 refer to Massachusetts law that speaks for itself. To the extent a response is required, Defendants deny the allegations as they are stated in Paragraph 5.

6.      Defendants admit the allegations in Paragraph 6.

7.      Defendants admit the allegations in Paragraph 7.

8.      Defendants admit that the rents in Chelmsford Commons are not uniform. Defendants deny any remaining allegations in Paragraph 8.

9.      Defendants admit that the rents in Chelmsford Commons are not uniform. Defendants deny any remaining allegations in Paragraph 9.

10.     10.     The allegations in Paragraph 10 contain conclusions of law to which no response is required. In addition, the allegations in this Paragraph refer to Massachusetts state law that speaks for itself. To the extent a response is required, Defendants deny the allegations in Paragraph 10.

11.     Defendants admit that on November 24, 2020, the Supreme Judicial Court of Massachusetts issued an opinion in *Blake v. Hometown America Communities, Inc.*, 486 Mass. 268, 158 N.E.3d 18 (2020). Defendants deny the allegations in Paragraph 11.

12.    The allegations in Paragraph 12 contain conclusions of law to which no response is required. In addition, the allegations in this Paragraph refer to Massachusetts case law that speaks for itself. To the extent a response is required, Defendants admit that the Chelmsford Commons rent structure remains unchanged since the *Blake* decision. Notwithstanding this response, Defendants deny the allegation that the *Blake* decision specifically prohibits the rent structure at Chelmsford Commons. Defendants deny the remaining allegations in Paragraph 12.

13.    Defendants deny that the amount of Mr. Smith's rent is solely the result of the date that he purchased his home. Defendants admit the remaining allegations in Paragraph 13.

14.    Defendants deny the allegations in Paragraph 14 and deny that Plaintiff is entitled to the relief he seeks in this action.

## JURISDICTION & VENUE

15.    Defendants are without sufficient information to admit or deny the allegations in Paragraph 15.

16.    Defendants deny the allegations in Paragraph 16.

## PARTIES

17.    Defendants admit the allegations in Paragraph 17.

18.    Defendants admit the allegations in Paragraph 18.

19.    Defendants admit the allegations in Paragraph 19.

## FACTS

I.    GENERAL ALLEGATIONS

20.    Defendants admit the allegations in Paragraph 20.

21.    Defendants admit that there are approximately 255 home-sites within Chelmsford Commons and deny the remaining allegations in Paragraph 21.

22.     The allegations in Paragraph 22 are vague and ambiguous with respect to the phrase "come with" and the term "similar." To the extent a response is required, Defendants deny the allegations in Paragraph 22.

23.     The allegations in Paragraph 23 are vague with respect to the term "purported." The Defendants admit that the homeowners at Chelmsford Commons, along with the Chelmsford Rent Control Board and the Massachusetts Attorney General's Office, implemented in 1990 a Master Lease, the terms of which speak for themselves.

24.     Defendants admit the allegations in Paragraph 24.

25.     Defendants admit the allegations in Paragraph 25.

26.     Defendants deny that offering occupancy agreements constitutes operating the community. Defendants admit the remaining allegations in Paragraph 26.

27.     Defendants deny that the purchase date of a resident's home determined the residents' rent. Defendants admit the remaining allegations in Paragraph 27.

28.     Defendants deny the allegations in Paragraph 28.

29.     Defendants admit the allegations in Paragraph 29.

30.     The content of the letter referenced in Paragraph 30 speaks for itself. To the extent a response is required, Defendants admit the allegations in Paragraph 30.

31.     The content of the letter and enclosure referenced in Paragraph 31 speaks for itself. To the extent a response is required, Defendants admit the allegations in Paragraph 31.

32.     The content of the letter and enclosure referenced in Paragraph 32 speaks for itself. To the extent a response is required, Defendants deny that they required any response from residents, but admit the remaining allegations in Paragraph 32.

33.    The content of the letter and enclosure referenced in Paragraph 33 speaks for itself. To the extent a response is required, Defendants deny the allegations in Paragraph 33.

34.    Defendants admit that the rents in Chelmsford Commons are not uniform. Defendants admit the residents' rent varies, but Defendants deny the any remaining allegations in Paragraph 34.

35.    Defendants admit the allegations in Paragraph 35.

36.    Defendants admit the allegations in Paragraph 36.

37.    Defendants admit the allegations in Paragraph 37.

38.    Defendants admit the allegations in Paragraph 38.

39.    The allegations in Paragraph 39 are vague with respect to the term "implemented." The Defendants admit the remaining allegations in Paragraph 39.

40.    The content of the letter and enclosure referenced in Paragraph 40 speaks for itself. To the extent a response is required, Defendants admit that they received a letter from Mr. Smith's counsel regarding the rent at Chelmsford Commons. Defendants deny any remaining allegations in Paragraph 40.

41.    Defendants do not have sufficient information to admit or deny the allegations in Paragraph 41.

42.    Defendants deny the allegations in Paragraph 42.

43.    43.    Defendants deny the allegations in Paragraph 43 and deny that Plaintiff is entitled to the relief he seeks in this action.

II.    CLASS ALLEGATIONS

44.    Paragraph 44 contains only a statement of Plaintiff's case and no allegation to which a response is required. To the extent that Paragraph 44 contains any allegations of wrongdoing by Defendants, Defendants deny these allegations.

45.    Defendants deny the allegations in Paragraph 45.

46.    Defendants deny the allegations in Paragraph 46.

47.    Defendants deny the allegations in Paragraph 47.

48.    Defendants do not have sufficient information to admit or deny the allegations in Paragraph 48. To the extent a response is required, Defendants deny the allegations in Paragraph 48.

49.    Defendants do not have sufficient information to admit or deny the allegations in Paragraph 49. To the extent a response is required, Defendants deny the allegations in Paragraph 49.

FIRST CAUSE OF ACTION<br>
BY SCOTT SMITH ON BEHALF OF HIMSELF AND THE CLASS<br>
GL. C. 93A § 9

50.    Defendants incorporate, as if fully set forth herein, each and every response to the allegations of the Complaint set forth in the preceding paragraphs.

51.    Paragraph 51 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 51.

52.    Paragraph 52 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 52.

53.    Paragraph 53 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 53.

54.     Defendants deny the allegations in Paragraph 54.

55.     Defendants deny the allegations in Paragraph 55.

56.     Paragraph 56 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 56.

57.     Paragraph 57 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 57.

58.     58.     Paragraph 58 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 58.

<u>DEMAND FOR JURY TRIAL</u>

Defendants demand, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues which are not issues of equity or law for the Court to determine.

<u>GENERAL DENIAL</u>

Defendants deny each and every allegation stated in or implied by the paragraphs, headings and subheadings of the Complaint that has not been expressly admitted above.

<u>AFFIRMATIVE AND OTHER DEFENSES</u>

The following affirmative and other defenses are alleged on information and belief by Defendants, and except as expressly stated otherwise, each defense applies to the entire Complaint and to each purported cause of action or claim for relief therein and to each plaintiff, beneficiary, heir, and other person on whose behalf this action is prosecuted (collectively referred to as "Plaintiff"). Defendants reserve the right to amend or withdraw any or all defenses or to raise any and all additional defenses as or after they may become known during or after the course of investigation, discovery, or trial.

No assertion of any affirmative or other defense shall constitute either (a) an admission that Plaintiff does not bear the burden of proof or the burden of producing evidence on any element of any cause of action or claim for relief or on any issue as to which Plaintiff bears the burden of proof or the burden of producing evidence as a matter of law, or (b) a waiver of Defendants' right to require that Plaintiff satisfies any burden of proof or burden of producing evidence.

<u>First Defense</u>

The Complaint, and each and every purported claim for relief therein, fails to state a claim against Defendants upon which relief can be granted.

<u>Second Defense</u>

Defendants did not willfully violate Section 32L of Chapter 140 or Chapter 93A of the Massachusetts General Laws.

<u>Third Defense</u>

Defendants' actions respecting the subject matter alleged in the Complaint and each cause of action thereof were undertaken in good faith, with the absence of malicious intent to injure Plaintiff or the putative class members, and constitute lawful, proper, and justified means to further Defendants' sole purpose of engaging in and continuing their businesses. Specifically, Defendants' actions were based upon a reasonable belief that such actions were not in violation of Section 32L(2) of the Manufactured Housing Act.

<u>Fourth Defense</u>

The Complaint and the purported claims for relief therein are barred, in whole or in part, to the extent Plaintiff seeks relief for any purported claims that were not brought before the expiration of the applicable statute of limitations.

<u>Fifth Defense</u>

Plaintiff has delayed inexcusably and unreasonably in the filing of this action causing substantial prejudice to Defendants and, thus, Plaintiff's claims are barred by the equitable doctrine of laches.

<u>Sixth Defense</u>

The Complaint, and each and every cause of action alleged therein, is barred, in whole or in part, by the doctrines of estoppel and waiver because of Plaintiff's acts and conduct.

<u>Seventh Defense</u>

Plaintiff's claims (and the claims of the alleged class members) are barred, in whole or in part, by the doctrine of express or implied waiver.

<u>Eighth Defense</u>

Plaintiff (and the alleged class members) are not entitled to injunctive relief because they have not suffered, nor will they suffer, irreparable harm.

<u>Ninth Defense</u>

Neither Plaintiff nor the alleged class members are entitled to injunctive relief because they have an adequate remedy at law.

<u>Tenth Defense</u>

Plaintiff's (and the alleged class members') claims are barred by lack of standing to the extent they and the putative class members suffered no cognizable injury.

<u>Eleventh Defense</u>

Defendants deny that Plaintiff is entitled to recover punitive damages based on the allegations set forth in the Complaint. Defendants further state that the imposition of punitive damages violates the provisions of the due process clause, the equal protection clause, the excess

fines clause and other applicable clauses contained in the Constitutions of the United States and of Massachusetts. Further, the correct burden of proof for the imposition of punitive damages is by "clear and convincing evidence" and/or "beyond a reasonable doubt." Any lesser standard violates the provisions of the due process clause of the Constitutions of the United States and of Massachusetts.

### Twelfth Defense

Defendants presently have insufficient knowledge or information upon which to form a belief as to whether they may have additional, as-yet unstated, affirmative defenses. Defendants reserve the right to assert additional affirmative defenses in the event that investigation and discovery indicate that the defenses would be appropriate.  Defendants reserve the right to amend their Answer to assert any and all additional affirmative defenses if subsequent investigation so warrants.

### PRAYER FOR RELIEF

WHEREFORE, having answered the Complaint, Defendants respectfully request that:

1)      The Complaint be dismissed with prejudice;

2)      Plaintiff and the individuals on whose behalf Plaintiff seeks relief take nothing by reason of the Complaint;

3)      Defendants be awarded their reasonable attorney's fees and costs of this action; and

4)      Such other and further relief as this Court deems just, equitable and proper.

### COUNTERCLAIMS

Defendants/Counterclaim Plaintiffs Chelmsford Group, LLC ("Chelmsford Group"), and Newbury Management Company ("Newbury") (together, the "Counterclaim Plaintiffs"), by and

through their undersigned counsel, hereby assert the following Counterclaims against Plaintiff/Counterclaim Defendant Scott Smith, on behalf of himself and other similarly-situated individuals (collectively "Plaintiff" or "Counterclaim Defendant").

## PARTIES

1.      Counterclaim Plaintiff, Chelmsford Group, LLC, is a Delaware limited liability company with its principal place of business in Michigan. It is a citizen of the States of Michigan, New York, Colorado, California, Washington, Illinois, Florida, Ohio, Pennsylvania, and Maryland, and a citizen of the foreign state of Israel because its members, and the members of its intermediate limited liability companies and the trustees of its intermediate trust, are and were citizens of those states and foreign state.

2.      Counterclaim Plaintiff, Newbury Management Company, is a Michigan corporation with a principal place of business in Michigan.

3.      Counterclaim Defendant, Scott Smith, is an individual domiciled in and a resident of the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

4.      This This Court has original jurisdiction of this civil action, under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1332(d), by reason of diversity of citizenship between the Plaintiff and the Defendants and the matter in controversy. The matter in controversy exceeds $5,000,000, given the potential permanent change in Chelmsford Commons' (defined below) rent structure urged by Plaintiff, and the resulting economic impact on Defendants' business.

5.      This Court has personal jurisdiction over Counterclaim Defendant by virtue of his residency in Middlesex County, Massachusetts, such that he should reasonably have anticipated being sued in Massachusetts.

6.      Venue is properly found in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Counterclaim Defendant's purported claim occurred, and the property that is the subject of this action is situated, in Middlesex County, Massachusetts, which is within this district.

## FACTUAL BACKGROUND

I.     CHELMSFORD COMMONS MANUFACTURED HOUSING COMMUNITY

7.      Chelmsford Group, LLC is the operator of a manufactured housing community in Chelmsford, Massachusetts, that is known as the Chelmsford Commons Manufactured Housing Community ("Chelmsford Commons" or the "Park"). Newbury provides management services at Chelmsford Commons.

8.      At Chelmsford Commons, tenants lease land lots from the Park operator, but own the manufactured homes that sit on the lots. This is typical of manufactured housing communities in Massachusetts.

9.      Chelmsford Commons includes approximately 255 separate lots, most of which are the same size.

10.     The Massachusetts Manufactured Housing Act, G.L. c. 140, § 32A, *et seq.*, governs the operations of manufactured housing communities, including how the community's operator charges rent to the community's tenants.

11.     Chelmsford Group began operating the Park in 2011, when it assumed operations from the Park's unrelated predecessor owner, Chelmsford Trailer Park, Inc. ("CPT"). CPT had operated Chelmsford Commons for decades prior to 2011.

12.     Chelmsford Group charges monthly rent in exchange for use of the lots. This rent is the sole source of revenue for the Park and funds the Park's operations.

II.    THE 1990 MASTER LEASE

13.    In 1985, CPT issued a notice of closing of Chelmsford Commons. In response, and with the goal of keeping the Park open for the benefit of its tenants, the Massachusetts Attorney General, the Chelmsford Rent Control Board, and the Chelmsford Mobile Home Park Tenants Association, Inc. (the "Tenants Association"), filed a class action to keep the Park open. The Massachusetts Superior Court certified the Attorney General and the Tenants Association as class representatives of the Park tenants. Eventually, CPT, the Attorney General, the Chelmsford Rent Control Board, and the Tenants Association negotiated a settlement that resolved the lawsuit. The settlement was documented and effected through a "Master Lease." (*See* Exhibit A (Master Lease), Recitals, ¶¶ 1-7, pp. 1-3.)

14.    The Master Lease became effective on January 1, 1991, and expired on December 31, 2020. (*See* Exhibit A, ¶ 2(a), p. 5.) Its purpose, among other things, was to "enable [the] Park to remain open for at least thirty (30) years." (*Id.*, Recitals, ¶ 4, p. 2.)

15.    The Master Lease dictated how CPT (and its successor, Chelmsford Group) could charge rent. The Master Lease (1) allowed annual rent adjustments based on the Consumer Price Index ("CPI"); and (2) provided an escalation clause, whereby new tenants of the Park would be charged 10% more than the preexisting tenant on the same lot. (*See* Exhibit A, ¶ 3(b), (c), 11(a), pp. 8, 16.)

16.    The escalation clause in the Master Lease, by reference to G.L. c. 140, §32L(2), created explicitly a separate class of tenants based on the timing of their occupancy in Chelmsford Commons:

> Whenever a tenant of his own volition vacates, removes the mobile home from his lot, transfers or sells his or her mobile home for other than nominal monetary consideration to an immediate family member or is evicted pursuant to legal proceedings, a new tenant shall be regarded as a member of a *dissimilar* class

for the purpose of G.L. 140, Section 32L(2). [The Park owner] may impose upon a new tenant occupying such lot an automatic monthly rent increase that does not exceed 10% of the rent that had been in effect immediately prior to such new tenant's entrance into Chelmsford Mobile Home Park.

Exhibit A, ¶ 11(a), p. 16 (emphasis added).

17.    Massachusetts General Law c. 140, §32L(2), provides as follows:

Any rule or change in rent which does not apply uniformly to all manufactured home residents of a similar class shall create a rebuttable presumption that such rule or change in rent is unfair.

(Exhibit B (G.L. c. 140, §32L(2)).)

18.    Massachusetts General Law c. 140, §32L(2), was enacted in 1973 and was effective at the time that the Attorney General, the Chelmsford Rent Control Board, the Tenants Association, and Counterclaim Plaintiffs' predecessor implemented the rent structure at Chelmsford Commons. (*See* Exhibit B.)

19.    The Master Lease was binding on the parties' successors, including Chelmsford Group when it assumed operation of the Park in 2011. (*See* Exhibit A, Recitals, ¶ 6, p. 2.)

20.    Counterclaim Plaintiffs had no part, in any way, of implementing the rent structure and escalation clause in the Master Lease, and, in fact, they were bound to abide by it until expiration of the Master Lease on December 31, 2020.

III.    THE OCCUPANCY AGREEMENTS

21.    During the term of the Master Lease, lots turned over at Chelmsford Commons, and the 10% increase was applied to new residents under the escalation clause in Paragraph 11(a) of the Master Lease. The result was that the rent charged for similar lots was varied: a so-called

"staggered" rent structure. By the end of the Master Lease term in 2020, the staggered rent structure was prevalent at Chelmsford Commons.

22.    The Master Lease, through its "staggered" rent provisions, provided sufficient funding for the Park to remain operational throughout the term of the Master Lease.

23.    As the Master Lease neared the end of its term, Counterclaim Plaintiffs engaged in discussions with tenants of Chelmsford Commons about the provisions of their tenancy after the Master Lease would expire, based on the provisions and conditions in the Master Lease.

24.    These discussions led Chelmsford Group and Newbury Management to send a letter to each tenant that enclosed an "Occupancy Agreement." The letters invited the tenants to choose from three options: a ten-year lease, a five-year lease, or a tenancy-at-will. The terms of each tenancy would begin on January 1, 2021.

25.    Each letter quoted a monthly rent that was identical to the rent that the resident had been paying in 2020 under the Master Lease. As a result, the rents in January 2021 would be "staggered" in the same way as they had been under the Master Lease.

26.    Chelmsford Group and Newbury Management sent the Occupancy Agreements to the tenants on November 30, 2020. Approximately 60% of the tenants chose a long-term (five or ten-year) lease, and approximately 40% chose a tenancy-at-will.

27.    To the date of the filing of Counterclaim Defendant's Class Action Complaint for Injunctive Relief and Damages (the "Complaint"), there had been no change to the rent charged to each tenant under the Master Lease, and the rent charged was the same.

IV.    SUPREME JUDICIAL COURT DECISION: *Blake v. Hometown Am. Communities, Inc.*

28.    On November 24, 2020, six days before Counterclaim Plaintiffs sent the Occupancy Agreements, the Supreme Judicial Court of Massachusetts decided the case of *Blake*

15

*v. Hometown America Communities, Inc.*, 486 Mass. 268, 158 N.E.3d 18 (2020). Deciding a matter of first impression, the Court held that "the time of entry into an occupancy agreement does not create a dissimilar class [of tenants] under § 32L(2)." *Id.* 486 Mass. at 277, 158 N.E.3d at 29 (Exhibit C (*Blake v. Hometown Am. Communities, Inc.*)).

29.    The *Blake* case was a dispute between the tenants and the owner of a manufactured housing community in Attleboro, Massachusetts. In that case, the community's owner raised the Chelmsford Commons Master Lease (Counterclaim Plaintiffs' Master Lease, although not applicable to the community in the *Blake* case) to support its argument that a staggered rent structure had been endorsed by the Attorney General and was thus lawful. *Id.* 486 Mass. at 275, 158 N.E.3d at 28 (Exhibit C). The Court distinguished the *Blake* dispute from the dispute resolved by the Chelmsford Commons Master Lease, holding that the Chelmsford Commons Master Lease created no legal precedent for the *Blake* dispute and involved different parties who had entered a settlement agreement under specific circumstances. *Id.* 486 Mass. at 276, 158 N.E.3d at 28. Importantly, the Court cited the Attorney General's regulations and its view that "the determination of a similar class under §32L(2) is 'a fact-specific inquiry that principally relates to the nature of the tenants' lots and the services they receive,' although it is possible that such an inquiry could lead to a determination that charging new residents a higher rent might be fair 'based on . . . particular circumstances.'" *Id.* 486 Mass. at 277, 158 N.E.3d at 29 (ellipses in original).

30.    The *Blake* opinion suggested for the first time that charging new tenants a higher rent based on the timing of their occupancy would create a dissimilar class, and that this would violate G.L. c. 140, § 32L(2). Nevertheless, the Court also distinguished Chelmsford Commons

16

from the facts of that the *Blake* case and cited the "particular circumstances" of the Chelmsford

Commons Master Lease. *Id.* 486 Mass. at 277, 158 N.E.3d at 29 (Exhibit C).

V.    THE DEMAND LETTERS

31.    On January 1, 2021, the tenants' new leases at Chelmsford Commons became

effective in accordance with the Occupancy Agreements, and the at-will and fixed-term

tenancies commenced. On January 8, 2021, Counterclaim Defendant, Scott Smith, sent a demand

letter to each of the Counterclaim Plaintiffs under the Massachusetts Consumer Protection Act,

M.G.L. c. 93A (the "Demand Letters"). (*See* Exhibit D (Demand Letter to Chelmsford Group,

LLC); Exhibit E (Demand Letter to Newbury Management Company).)

32.    Counterclaim Defendant is a resident of Chelmsford Commons, and his demands

were made on behalf of himself and "all other similarly situated current or former homeowners,

residents, or other rent-paying individuals of Chelmsford Commons." (Exhibits D, E, at p. 1.)

The Demand Letters were prepared and sent by Counterclaim Defendant's counsel.

33.    The Demand Letters allege that, in light of the recent *Blake* decision,

Counterclaim Plaintiffs' rent structure creates separate classes based on time of occupancy in

violation of G.L. c. 140, §32L(2). (*See* Exhibits D, E, at p. 2.)

34.    The Demand Letters allege that Counterclaim Defendant is paying a higher

monthly rent than at least one other resident of Chelmsford Commons, and, as a result, the

"unlawful setting and charging of rental fee amounts has caused Mr. Smith and the putative class

members to overpay rent. For each month forward that community management continues this

practice, Mr. Smith, as well as the putative class members, are unlawfully overpaying." (Exhibits

D, E, at p. 2.).

35.     The Demand Letters demand that Counterclaim Plaintiffs "(1) charge uniform monthly rental fee amounts for all residents, homeowners, or other rent-payers within Chelmsford Commons; and (2) reimburse Mr. Smith and all putative class members all overpaid rent." (Exhibits D, E, at pp. 2-3.)

36.     The Demand Letters do not suggest what the uniform monthly rental fee should be, or how much should be reimbursed.

37.     Counterclaim Plaintiffs responded to the Demand Letters on March 26, 2021. Counterclaim Plaintiffs' response is attached as Exhibit F. Counterclaim Defendant commenced the present civil action, as a putative class action, on March 26, 2021.

*Conclusion*

38.     Because, to the date of the filing of the Complaint, there had been no change in rent to those residents whose rents were determined under the Master Lease, their expectations of their monthly rent and the services they received have not been altered.

39.     For the same reason, revenue received by Chelmsford Commons remained constant, which permitted Chelmsford Commons to operate in the same manner as it did prior to expiration of the Master Lease.

40.     40.     If the rent charged to Park Residents is made uniform and at the lowest rate currently charged in the Park, as Counterclaim Defendant urges, the resulting loss of revenue to Counterclaim Plaintiffs would exceed $5,000,000.

41.     The impact of such a change in rent would be experienced in perpetuity by both the residents and Counterclaim Plaintiffs, and Chelmsford Commons' ability to operate as a manufactured housing community would be restricted, if not prevented outright.

42. The statutory provision that is applicable in this case, M.G.L. ch. 140 § 32L(2), provides that "[a]ny rule or change in rent which does not apply uniformly to all manufactured home residents of a similar class shall create a rebuttable presumption that such rule or change in rent is unfair."

43. The Massachusetts Supreme Judicial Court's *Blake* decision held that the time of entry into occupancy does not create a dissimilar class of tenants under § 32L(2).

44. Given the staggered rent structure created by the Master Lease, changing Chelmsford Commons' rental structure according to Counterclaim Defendant's request may violate § 32L(2) because it would be a "change in rent" that applies non-uniformly to the Park residents.

45. The Master Lease created a situation at Chelmsford Commons that rebuts the presumption of unfairness articulated in § 32L(2).

46. As requested below, Counterclaim Plaintiffs seek a declaration of the parties' rights in light of the Master Lease, the Occupancy Agreements, and *Blake v. Hometown America Communities, Inc*., 486 Mass. 268, 158 N.E.3d 18 (2020).

## COUNT I
### REQUEST FOR DECLARATORY RELIEF:
### <u>CHELMSFORD COMMONS CURRENT RENT STRUCTURE</u>

47. The Counterclaim Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 46 as if fully set forth here.

48. An actual justiciable controversy exists between Counterclaim Plaintiffs and Counterclaim Defendant. Counterclaim Defendant contends that each of the 255 tenants at Chelmsford Commons is being over-charged for rent. Counterclaim Plaintiffs contend that their rent structure is lawful and that they are not over-charging Counterclaim Defendant, or any other

tenant of the Park. Counterclaim Defendant has demanded in this action that Counterclaim Plaintiffs alter their entire rent structure, which would impact Counterclaim Plaintiffs' revenue by a measure of millions of dollars and their ability to operate the Park. Litigating this matter in the form of a class action would take years, would be unnecessarily burdensome for Counterclaim Plaintiffs and the tenants of Chelmsford Commons, and would only serve to exacerbate any damages that may be at issue. In light of this controversy and to prevent additional, onerous litigation, Counterclaim Plaintiffs seek declaratory relief from this Court.

49.     Counterclaim Plaintiffs request a declaration that their existing staggered rent structure with nonuniform rents, in light of the Master Lease and the particular circumstances and history of Chelmsford Commons, is lawful and in full compliance with G.L. c. 140, § 32L(2), specifically, and the Massachusetts Manufactured Housing Act, generally, and is consistent with the *Blake* opinion.

## COUNT II
## REQUEST FOR DECLARATORY RELIEF:
## ALTERNATIVE PROPOSED RENT STRUCTURE

50.     Counterclaim Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 49 as if fully set forth here.

51.     An actual justiciable controversy exists between Counterclaim Plaintiffs and Counterclaim Defendant. Counterclaim Defendant contends that each of the 255 tenants at Chelmsford Commons is being over-charged for rent. Counterclaim Plaintiffs contend that their rent structure is lawful and that they are not over-charging Counterclaim Defendant, or any other tenant of the Park. Counterclaim Defendant has demanded in this action that Counterclaim Plaintiffs alter their entire rent structure, which would impact Counterclaim Plaintiffs' revenue by a measure of millions of dollars and their ability to operate the Park. Litigating this matter in

the form of a class action would take years, would be unnecessarily burdensome for Counterclaim Plaintiffs and the tenants of Chelmsford Commons, and would only serve to exacerbate any damages that may be at issue. In light of this controversy and to prevent additional, onerous litigation, Counterclaim Plaintiffs seek declaratory relief from this Court.

52.    If the Court does not issue the declaration requested in Count I because it finds that Chelmsford Commons' existing staggered rent structure with nonuniform rents is not consistent with the *Blake* opinion, then, in order to bring the staggered rent structure into uniformity, over a period of time, Counterclaim Plaintiffs request an alternative declaration that the implementation of the following rent structure complies with G.L. c. 140, § 32L(2), specifically, and the Massachusetts Manufactured Housing Act, generally, and is consistent with the *Blake* opinion:

a.    The current tenants of Chelmsford Commons who are parties to Occupancy Agreements for rental terms of five or ten years will continue to be bound by the terms of their Occupancy Agreements, and they will constitute a class of tenants at Chelmsford Commons.

b.    The current tenants of Chelmsford Commons who are tenants-at-will will have their monthly rent adjusted (over time if necessary to avoid undue hardship to a particular tenant) to reflect the current fair market rental value. Fair market rental value will be determined annually, and the monthly rent for tenants-at-will will be adjusted accordingly on an annual basis. The same monthly rent, based on the fair market rental value, will be charged to every one of these tenants-at-will, inclusive of any annual adjustments. The initial

monthly rent may need to be less than current fair market rental value, if necessary to avoid an unintended windfall to Chelmsford Group.

c.  The future tenants of Chelmsford Commons will be charged a monthly rent that is based on the fair market rental value. Fair market rental value will be determined annually, and the monthly rent for these tenants will be adjusted accordingly on an annual basis. The same monthly rent, based on the fair market rental value, will be charged to every one of these new tenants, inclusive of any annual adjustments.

d.  The current tenants of Chelmsford Commons who are described in subparagraph (b), above, and the future tenants of Chelmsford Commons who are described in subparagraph (c), above, will constitute a separate, second class of tenants at Chelmsford Commons. For purposes of the Park's rental structure, there will be two classes of tenants at Chelmsford Commons: those who are subject to Occupancy Agreements of five or ten years (as described in subparagraph (a), above), and those who are current tenants-at-will or future tenants at the Park  (as described in subparagraphs (b) and (c), above).

e.  The current tenants of Chelmsford Commons who are parties to Occupancy Agreements for rental terms of five or ten years will, after the terms of their current Occupancy Agreements expire, have their rent adjusted (over time if necessary to avoid undue hardship to a particular tenant) to reflect the fair market rental value to align with the rent charged to both the tenants-at-will and to the future tenants.

f.  The effect of subparagraphs (a) through (e) above will be to:

    i.   Temporarily create two classes of tenants based on the nature of their current tenancy at Chelmsford Commons, not on the timing of their occupancy;

    ii.   Extinguish, over time, the staggered rent structure implemented by the Master Lease by merging the two classes into a single class after the current Occupancy Agreements expire; and

    iii.   Permit the staggered current rent structure to expire naturally without interfering with the tenants' expectations in light of the Master Lease and their Occupancy Agreements.

WHEREFORE, Counterclaim Plaintiffs, Chelmsford Group, LLC, and Newbury Management Company, pray that the Court:

(a)    order a speedy hearing and advance this action on the calendar for determination and declaratory judgment;

(b)    if necessary for the Court's determination, order a briefing schedule for the parties' arguments on these issues prior to the hearing;

(c)    issue a judicial declaration regarding the obligations of the parties under the Master Lease, the Occupancy Agreements, and Massachusetts law, and granting the relief requested above; and

(d)    grant any other relief in favor of Counterclaim Plaintiffs as the Court deems fair and equitable.

Dated: November 24, 2021

Respectfully submitted,

CHELMSFORD GROUP, LLC and NEWBURY
MANAGEMENT COMPANY,
By their attorneys,

  /s/ Michael R. Brown                          *Of counsel*
Michael R. Brown | BBO No. 664239
Kaitlin K. Smith | BBO No. 687594               Joseph Aviv
ADLER POLLOCK & SHEEHAN P.C.                    Honigman LLP
175 Federal Street                              Suite 101
Boston, MA 02110                                39400 Woodward Avenue
T: 617 482 0600                                 Bloomfield Hills, Michigan  48304-5151
MBrown@apslaw.com                               Telephone:  (248) 566-8404
KSmith@apslaw.com                               javiv@honigman.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Answer, Affirmative Defenses, and
Counterclaims of Chelmsford Group, LLC, and Newbury Management Company to be filed
through the ECF system on the 24th day of November, 2021, and a notice will be sent
electronically to all counsel who are registered participants, including the following counsel of
record:

Brian J. O'Donnell
Northeast Justice Center
50 Island Street, Ste. 203B
Lawrence MA 01840
Ph. (978) 888-0624
F. (978) 323-0124

                                    */s/ Kaitlin K. Smith*
                                    Kaitlin K. Smith

1097747.v1